**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, P. J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 14, 2025**

# In the Court of Appeals of Georgia

A24A1477. PATEL v. STATE OF GEORGIA.

MCFADDEN, Presiding Judge.

Jagrutiben Patel appeals from a judgment in favor of the state on its petition seeking forfeiture of currency in connection with the possession and sale by Patel's convenience store of edible products containing delta-8-THC. She argues, among other things, that the trial court erred because the state "failed to carry its burden of proof to support its forfeiture petition." We agree that the state did not present evidence to meet its "burden of proof . . . to show by a preponderance of the evidence that seized property is subject to forfeiture." OCGA § 9-16-17 (a) (1). So we reverse the judgment. Given this disposition, we do not reach Patel's other enumerations of error.

1. *Facts and procedural history*

The state filed a petition for forfeiture under OCGA §§ 9-16-12 of the Uniform Civil Forfeiture Procedure Act and 16-13-49 (b) of the Georgia Controlled Substances Act, asserting that law enforcement officers had executed a search warrant at Patel's store and had discovered various delta-8-THC products that the state alleged were controlled substances and, therefore, contraband. The state asserted that it had seized an amount of currency that was subject to forfeiture because it "was directly or indirectly used or intended for use to facilitate the possession, storage, and distribution of [the] products . . . and/or is proceeds derived or realized therefrom and/or was found in close proximity to the products. . . ." See OCGA § 16-13-49 (b) (2); (5). In response, Patel asserted that the products were not contraband because they were "hemp" or "hemp products" that did not fall within the definition of a controlled substance.

After a series of motions and rulings that are not pertinent to our disposition of this appeal, the case proceeded to an evidentiary hearing. Evidence was presented that Patel's store possessed and sold edible products infused with delta-8-THC, which the parties stipulated is a "tetrahydrocannabinol substance which may be contained in the

2

plant [C]annabis sativa L." and "may be a derivative of [C]annabis sativa L." Evidence was also presented that the products were in proximity to the seized currency inside the store.

The trial court found, among other things, that the state had established a presumption that the products were contraband because they contained THC and that Patel had failed to rebut that presumption by showing that they were "hemp" or "hemp products." So the trial court entered judgment for the state. Patel appeals.

2. *Analysis*

The Georgia Controlled Substances Act provides that controlled substances, proceeds from the sale of controlled substances, and property found in close proximity to controlled substances are contraband subject to forfeiture in accordance with the procedures set forth in Uniform Civil Forfeiture Procedure Act. OCGA § 16-13-49 (b), (c). Under the Uniform Civil Forfeiture Procedure Act, "[t]he state's burden of proof shall be to show by a preponderance of the evidence that seized property is subject to forfeiture." OCGA § 9-16-17 (a) (1). The Uniform Civil Forfeiture Procedure Act recognizes a rebuttable presumption that property is subject to forfeiture. OCGA § 9-16-17 (b). But to be entitled to that presumption, the state is

required to establish by a preponderance of the evidence that, among other things, the person whose property is at issue "has engaged in conduct giving rise to forfeiture[.]" OCGA § 9-16-17 (b) (1).

The state's assertion that Patel had engaged in conduct giving rise to forfeiture was premised on its claim that the products infused with delta-8-THC were controlled substances. So to prevail on its forfeiture petition, the state was required to show by a preponderance of the evidence that the products were controlled substances. Only then would the state be entitled to the rebuttable presumption of OCGA § 9-16-17 (b) (1) that the property was subject to forfeiture.

The state did not present evidence to meet this burden. While there was evidence that the products were infused with THC, not all THC is a controlled substance. The Georgia Controlled Substances Act defines the term "controlled substance" to mean "a drug, substance, or immediate precursor in Schedules I through V of Code Sections 16-13-25 through 16-13-29 and Schedules I through V of 21 CFR Part 1308." OCGA § 16-13-21 (4). And it defines Schedule I controlled substances to include:

> Tetrahydrocannabinol, tetrahydrocannabinolic acid, or a combination of tetrahydrocannabinolic acid which does not contain plant material

4

exhibiting the external morphological features of the plant of the genus Cannabis, *but not including* such substance when found in hemp or hemp products as such terms are defined in Code Section 2-23-3 [of the Georgia Hemp Farming Act].

OCGA § 16-13-25 (3) (P) (emphasis supplied). Thus, if a product falls within the definition of "hemp" or "hemp product" under the Georgia Hemp Farming Act, then it is not a controlled substance even if it contains THC.

In this case the question is whether the products constituted "hemp." We do not consider whether they fell within the definition of "hemp products" because at the time of the proceedings below, the Georgia Hemp Farming Act defined "hemp products" to exclude "food products infused with THC unless approved by the United States Food and Drug Administration." OCGA § 2-23-3 (6) (2021). The parties stipulated that the products in this case were edible gummies infused with THC, the trial court held that they were food products that had not been approved by the FDA, and Patel does not contest that holding. Instead, she argues that we should apply retroactively an amendment to the Georgia Hemp Farming Act that eliminated the requirement for FDA approval from the definition of "hemp products." See OCGA § 2-23-3 (13). We cannot do so because the amendment went into effect on

October 1, 2024, after the trial court entered judgment in this case, and the statutory text does not indicate that the amendment should be applied retroactively. See *Deal v. Coleman*, 294 Ga. 170, 174-175 (1) (b) (751 SE2d 337) (2013) ("Generally speaking, the retroactive application of statutes has long been disfavored in the law, even if it is not always forbidden. For that reason, courts usually insist upon some clear indication in the statutory text that a statute is to be applied retroactively before so applying it.") (citations, punctuation, and footnote omitted).

We now turn to whether the evidence presented to the trial court demonstrates that the products in this case fell outside the definition of "hemp." It does not. At the time of the proceedings below, the Georgia Hemp Farming Act defined "hemp" as "the Cannabis sativa L. plant and any part of such plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with the federally defined THC level for hemp or a lower level." OCGA § 2-23-3 (5) (2021). The "'[f]ederally defined THC level for hemp' mean[t] a delta-9-THC concentration of not more than 0.3 percent on a dry weight basis, or as defined in 7 U. S. C. Section 1639o, whichever is greater." OCGA § 2-23-3 (3) (2021). (Delta-9-THC is another tetrahydrocannabinol substance that has a

different chemical structure from delta-8-THC. See *Elements Distrib. v. State of Ga.*, 369 Ga. App. 844, 847 (2) (894 SE2d 641) (2023) (physical precedent only).)

In other words, the version of the Georgia Hemp Farming Act in effect at the time defined hemp to encompass products containing "the Cannabis sativa L. plant and any part of such plant" *unless* they contained more than 0.3 percent of delta-9-THC. OCGA § 2-23-3 (5) (2021). This means that the presence of delta-8-THC alone is not enough to remove a product from the definition of "hemp" under OCGA § 2-23-3 (5) (2021) and render it a controlled substance under OCGA § 16-13-25 (3) (P); to be a controlled substance it must *also* contain more than a 0.3 percent concentration of delta-9-THC. To the extent the trial court held that the presence of delta-8-THC alone rendered the products in this case controlled substances, he erred.

Instead, to show that a product containing THC fell outside the applicable definition of hemp, and thus was a controlled substance, the state was required to show not just that it contained delta-8-THC, but also that it contained the necessary concentration of delta-9-THC. But the state presented no evidence establishing the concentration of delta-9-THC in any of the products at issue. Consequently, it did not establish by a preponderance of the evidence that the delta-8-THC-infused products

7

in this case were controlled substances rather than hemp under OCGA § 16-13-25 (3) (P). It follows that the state did not establish that Patel had engaged in any conduct giving rise to forfeiture, which it was required to do by OCGA § 9-16-17 (b) (1) before it was entitled to a presumption that Patel's property was subject to forfeiture.

For this reason, we agree with Patel that the state "failed to carry its burden of proof to support its forfeiture petition[,]" and so we reverse the trial court's judgment in favor of the state.

*Judgment reversed. Rickman, P. J., concurs specially and Mercier, C. J., concurs in judgment only.*

PATEL v. THE STATE.

RICKMAN, Presiding Judge, concurring specially.

I concur with the majority opinion that the state failed to carry its burden of proving that Patel engaged in conduct giving rise to forfeiture, and that the trial court erred by granting the petition seeking forfeiture of currency seized from her convenience store. I write separately to further explain why, on the record before us, the state failed to show that the delta-8-THC contained in the products sold by Patel was a controlled substance as defined by Georgia law and, consequently, failed to present a prima facie case that the seized funds were subject to forfeiture.

Georgia law in this area continues to evolve. In 2019, the Georgia General Assembly passed the Georgia Hemp Farming Act, which adopted the federal definition of hemp and hemp products and permitted their cultivation and sale under certain circumstances. See OCGA § 2-23-1 et seq. In November 2021, the Georgia Controlled Substances Act included THC in its list of Schedule I controlled substances, but explicitly exempted THC "when found in hemp." See OCGA § 16-13-25 (3) (P). The Georgia Hemp Farming Act defined "hemp" as "the Cannabis sativa L. plant and any part of such plant, including . . . all derivatives, extracts, [and] cannabinoids . . ., with [a delta-9-THC concentration of not more than 0.3 percent on a dry weight basis]." OCGA § 2-23-3 (5) (2021); see 7 USCA § 1639o (1).

With respect to the products containing delta-8-THC seized by law enforcement from Patel's store and used to sustain the state's petition of forfeiture, Patel submitted affidavits from a pharmacologist and a board-certified technologist in chemistry, both of whom explained that delta-8-TCH is a naturally occurring cannabinoid compound commonly derived from the hemp Cannabis sativa L. plant. The parties expressly stipulated to the same. Thus, naturally-occurring delta-8-THC is a hemp derivative and, under the plain language of the governing statute during the relevant time period, was not considered a controlled substance under Georgia law so

2

long as it contained a delta-9-THC concentration of not more than 0.3 percent. See OCGA §§ 2-23-3 (5) (2021); 16-13-25 (3) (P).

Nevertheless, the trial court noted that delta-8-THC may also be produced synthetically "from non-cannabis materials," and that synthetically-produced delta-8-THC may not have been exempted from the list of Schedule I controlled substances. See *AK Futures LLC v. Boyd Street Distro, LLC*, 35 F4th 682, 692 (9th Cir. 2022) (citing a letter from the Drug Enforcement Agency stating that "synthetic" delta-8-THC is produced "from non-cannabis materials" and thus remains banned). Based on that possibility, the trial court afforded the state a rebuttable presumption that the products seized from Patel's store containing delta-8-THC were Schedule I controlled substances, and placed on Patel the burden of proving that those products contained naturally-occurring, as opposed to "synthetic," delta-8-THC. In doing so, the trial court erroneously relieved the state of its burden to prove by a preponderance of the evidence that Patel violated the Georgia Controlled Substances Act. See OCGA § 9-16-17 (b); *State v. Foote*, 225 Ga. App. 222, 224 (2) (483 SE2d 628) (1997) ("[T]he [s]tate [must] prove a violation of the Georgia Controlled Substances Act . . . before any property interest may be subject to forfeiture. . . . Obviously, this requirement is

not an 'exception' to forfeiture, but is an essential element of proof if the [s]tate intends to proceed under the statute.") (emphasis omitted).

In sum, the only evidence in the record before this Court, by way of affidavits and the parties' stipulations, is that the delta-8-THC contained in the products seized from Patel's store may have been naturally derived from the hemp cannabis plant and, therefore, may not have been a Schedule I controlled substance. And, as discussed in the majority opinion, the state presented no evidence that the products contained an unlawful concentration of more than 0.3% delta-9-THC. As such, the state failed to establish by a preponderance of the evidence that Patel's property was subject to forfeiture, and the trial court erred by holding otherwise.